IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEBORAH BREUNER DAVIS, an Individual; and DEBORAH BRUENER DAVIS, as Trustee of the DEBORAH C. DAVIS TRUST, a Revocable Trust Dated February 21, 1975, amended and restated March 16, 2000,<br><br>        Plaintiffs,<br><br>v.<br><br>KEYBANK NATIONAL ASSOCIATION, a/k/a Key Bank Private Banking, a/k/a Key Private Bank, a/k/a Key Bank, a/k/a McDonald Financial Group, a Federally Chartered Commercial Bank and a National Banking Association; M. DARIN HAMMOND, an Individual; SMITH KNOWLES A PROFESSIONAL CORPORATION and DOES 1 Through 50, Inclusive,<br><br>        Defendants. | Case No. CV-05-198-E-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it (1) plaintiffs' motion to amend complaint,

**Memorandum Decision and Order – Page 1**

(2) plaintiffs' motion for partial summary judgment, and (3) defendants' motion to dismiss.  The Court heard oral argument on the motions and took them under advisement.  For the reasons expressed below, the Court will grant in part the motion to amend, grant in part the motion for partial summary judgment, and deny the motion to dismiss.

## FACTUAL BACKGROUND

Plaintiff Deborah Breuner Davis claims that defendant Key Bank improperly foreclosed on two real estate loans.  The first loan was for $250,000 to expand her clothing business in Colorado.  This was a home equity loan secured by a deed of trust to Davis's Sun Valley home.

Thereafter, Davis decided to move to Colorado.  She put her Sun Valley home on the market, and received an offer of $2 million.  To arrange the purchase of a Colorado home, she sought the advice of Matthew Loren from Key Bank.  She alleges that he advised her to take out a "bridge loan" of $1.4 million with a 3-month maturity date secured by a mortgage on her Sun Valley home.  The quick maturity date was designed to coincide with the sale of Davis's Sun Valley home that would provide the proceeds Davis needed to pay off the bridge loan.

Davis followed this advice, obtained the bridge loan, and used it to purchase the Colorado house before closing on her Sun Valley home.  Unfortunately,

**Memorandum Decision and Order – Page 2**

however, the sale of her Sun Valley home fell through, leaving her with a past due bridge loan that she could not pay.

While Davis was clearly in default on her bridge loan at this time, it is less clear whether she was also in default of her home equity loan. At any rate, Key Bank decided to foreclose on the trust deed securing the home equity loan rather than the mortgage securing the bridge loan.

Key Bank served Davis with a Notice of Trustee's Sale. Davis, through her attorney Robert Lees, threatened to enjoin the sale. The parties negotiated an agreement whereby Davis would pay $10,000, and agree not to seek to enjoin the Trustee's sale, to buy time to sell her Sun Valley home. Davis later sought additional extensions, and paid another $10,000.

Ultimately, Davis could not sell her Sun Valley home. Key Bank sold the home under the trust deed, and Davis claims to have lost over $1 million in equity from that sale. She has brought this suit to recover her damages.

## ANALYSIS

1. **Davis's Motion to Amend Complaint**

Davis seeks to file a Third Amended Complaint. Her motion is timely and is governed by the liberal provisions of Rule 15. Key Bank argues, however, that her amendments are futile and hence should be denied.

**Memorandum Decision and Order – Page 3**

Key Bank contends that Davis's attempt to add a breach of contract claim must be rejected as futile. The amended complaint could be read to allege a breach of an oral contract for financial advice related to the loans. The alleged consideration for this contract was Davis's agreement to enter into the home equity and bridge loans. At this stage in the proceedings, the Court cannot find that this claim is futile.

Key Bank contends that Davis's attempt to add a breach of fiduciary duty claim must be rejected as futile. The general rule in Idaho is that no fiduciary duty exists between a bank and its customer. *See Black Canyon Racquetball Club, Inc. v. Idaho First National Bank*, 804 P.2d 900 (Idaho. 1991). A typical loan transaction creates a debtor/creditor relationship where each side seeks to maximize its own interest. A fiduciary, on the other hand, "is a person with a duty to act primarily for the benefit of another." *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841 (Idaho, 1991). Certainly the standard debtor/creditor relationship comes nowhere near to satisfying this test – the bank is acting primarily to benefit itself, not the debtor. To create a fiduciary relationship, "the property, interest, or authority of another is placed in charge of a fiduciary." *Id*.

The issue here is whether Davis's allegations could be read to assert that Key Bank took charge of Davis's property or interests. They cannot. Assuming

**Memorandum Decision and Order – Page 4**

the truth of Davis's allegations, she was ignorant of financial matters, relied completely on Key Bank for sound advice, and thereby placed her financial interests entirely in Key Bank's hands. Put in this position of trust, Key Bank abused it to profit from her ignorance, knowing of her precarious financial condition.

Davis's allegations support various causes of action, but do not create a fiduciary duty on the part of Key Bank. Davis cites no case holding that a bank, upon encountering a helplessly ignorant and financially troubled loan customer, must repress its own interests and, as required of a fiduciary, "act primarily for the benefit" of the customer. If that was the rule, most commerce would become charity. Idaho law simply fails to support Davis's claim, rendering it futile.[1] Thus, her proposed amendment to add it shall be rejected.

Davis's other proposed amendments based on the alleged special relationship – constructive fraud and gross negligence – shall likewise be rejected. Davis herself concedes that her negligent misrepresentation claim is not supported by existing Idaho law, *see Davis's Brief* at p. 2, and this Court finds no indication that Idaho courts would extend the law to cover this case. Thus, the negligent

---

[1] Obviously, allegations that a customer suffered from some incapacity, such as a mental disease or defect, would completely change the analysis. There are no such allegations here, however.

**Memorandum Decision and Order – Page 5**

misrepresentation claim will be rejected.

The final claim that Davis seeks to add is a claim for intentional misrepresentation or fraud. Davis alleges that Key Bank intentionally withheld crucial information, including the substantial risk she was undertaking, in order to reap hefty fees by steering her to the bridge loan. Her allegations are sufficient for purposes of Rule 15(a), and Rule 9(b), and this proposed amendment will be allowed.

In conclusion, the Court will grant in part the motion to amend. The Court will allow the filing of claims I (Breach of Contract) and VI (Intentional Misrepresentation), but will deny the proposed amended claims II (Breach of Fiduciary Duty), III (Constructive Fraud), IV (Lender Liability – Gross Negligence), and V (Negligent Misrepresentation).

## 2.     Key Bank's Motion to Dismiss for Failure to Join Indispensable Party

This motion has been mooted by the Court's ruling allowing the filing of part of the proposed Third Amended Complaint. The changes made by Davis in this Third Amended Complaint now make clear, for the first time, that Davis is suing Key Bank for its own advice, not the advice of McDonald Investments, the party Key Bank claims is indispensable. For this reason, the Court finds Key Bank's motion moot.

### 3.   Davis's Motion for Summary Judgment on Count 18.

In Count 18, Davis claims that Key Bank breached the terms of the home equity loan and trust deed when it demanded the amounts due on the bridge note to stop foreclosure of the trust deed. Davis seeks summary judgment on this claim, arguing that the breach is clear as a matter of law.

The Court agrees. Both sides agree that the trust deed, by its own terms, only secured subsequent obligations that referenced the trust deed. There is no dispute that the bridge loan documents never mentioned the trust deed. Thus, the bridge loan was not secured by the trust deed, and Key Bank had no contractual right to foreclose on the trust deed because the bridge loan was in default. Moreover, even if Key Bank had the right to foreclose the trust deed because the home equity loan was in default, Key Bank had no right to require payment of both the bridge loan and the home equity loan as a condition of halting the trust deed foreclosure.

It is therefore clear as a matter of law that Key Bank breached the contract. However, the Court cannot rule on remedy issues for two reasons. First, Davis concedes that questions of fact exist on her claim for monetary damages. *See Davis's Reply Brief* at p. 4. While she suggests that the Court could simply set aside the sale and allow Key Bank to file a counterclaim to take another run at

**Memorandum Decision and Order – Page 7**

foreclosure – this time a judicial foreclosure of the bridge loan mortgage[2] – the Court rejects that suggestion because there remain questions of fact as to whether waiver or estoppel apply to prevent Davis from asserting the breach.

Before the first date set for the Trustee's Sale, Davis's attorney Robert Lees negotiated a delay with attorney Darin Hammond who was acting as attorney for the trustee.  Hammond filed his affidavit stating that he had a telephone conversation with Lees on June 21, 2004, where Lees threatened to enjoin the Trustee's Sale, and requested an extension of the sale date to allow Davis to sell the property.  *See Hammond Affidavit* at p. 3.  Hammond responded that if Davis was willing to waive her defenses to the sale and agree not to seek an injunction, Key Bank would be willing to extend the sale date.  *Id*.  According to Hammond, Lees responded that Davis would be willing to give up her rights if Key Bank granted an extension.

Hammond sent a confirming e-mail dated June 23, 2004, and asked Lees to respond in writing.  He did so on the same day, stating in a letter that "I will agree that Ms. Davis will not seek an injunction or temporary restraining order of the

---

[2] There are questions of fact as to whether Davis brought current the home equity loan with two $10,000 payments.  If so, and if waiver does not apply, the proper remedy would be to set aside the Trustee's Sale, reinstate title in Davis, reinstate her home equity obligation, and allow Key Bank to file a counterclaim for judicial foreclosure of the mortgage because the bridge loan default has not been cured.

**Memorandum Decision and Order – Page 8**

postponed sale, now set for July 30, 2004." *See Exhibit L to Affidavit of Hammond.*

Hammond's affidavit creates questions of fact as to whether Davis waived her defenses to the foreclosure of the trust deed. It is true that Lees' letter of June 23, 2004, does not state that Davis is waiving her defenses, but only states that she will not seek to enjoin the sale. However, according to Hammond's recollection of the June 21, 2004, conversation, Davis's waiver of her defenses was part and parcel of the agreement between the parties. Davis herself, in a letter she wrote dated August 27, 2004, characterized her agreement as a "waiver that [her attorney] not sue [Key Bank] on my behalf." *See Exhibit P to Hammond Affidavit.*

Davis argues that Hammond's affidavit should not be considered because "if is being offered to change the terms of a written agreement." *See Davis Evidentiary Objection to Affidavit of Hammond* at p. 2. Under Idaho law, if a written agreement is complete on its face and unambiguous, with no fraud or mistake alleged, extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, add to or detract from the terms of the written contract. *Thorn Creek Cattle Ass'n, Inc. v. Bonz*, 830 P.2d 1180 (Idaho. 1992).

If the "written agreement" referred to by Davis is the trust deed, any

**Memorandum Decision and Order – Page 9**

agreement to waive defenses was reached after the trust deed was signed and hence is not covered by *Thorn Creek*. If Davis is arguing that the series of oral conversations, e-mails, and letters concerning the extension of the Trustee's Sale constitute a "written agreement," the Court cannot find, as a matter of law, that these the "agreement" is complete on its face and unambiguous. Consequently, the Court cannot ignore Hammond's affidavit. Because it creates issues of fact on the waiver and estoppel issues, the Court can only grant a part of Davis's motion.

The Court will grant Davis's motion to the extent it seeks a finding that Key Bank breached the terms of the home equity loan agreement and trust deed by demanding payment on the bridge note as a condition of halting the foreclosure of the trust deed. The Court finds questions of fact as to whether Davis waived that breach, however, and will therefore deny summary judgment as to remedies.

## ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to amend to filed a Third Amended Complaint (Docket No. 85) is GRANTED IN PART AND DENIED IN PART. It is denied to the extent it seeks to add the following claims: II (Breach of Fiduciary Duty), III (Constructive Fraud), IV (Lender Liability – Gross Negligence), and V (Negligent Misrepresentation). It is granted

**Memorandum Decision and Order – Page 10**

in all other respects.  Davis shall file a corrected Third Amended Complaint by May 9, 2006, incorporating these rulings into the documents and the Clerk of the Court is directed to file that document when presented by Davis.

IT IS FURTHER ORDERED, that Key Bank's motion to dismiss for failure to join an indispensable party (Docket No. 72) is DEEMED MOOT.

IT IS FURTHER ORDERED, that Davis's motion for partial summary judgment on Count 18 (Docket No. 91) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks a finding that Key Bank breached the terms of the home equity loan agreement and trust deed by demanding payment on the bridge note as a condition of halting the foreclosure of the trust deed.  It is denied in all other respects.

DATED:  **May 8, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order – Page 11**