IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DEBORAH BREUNER DAVIS, et al., | ) ) ) ) | Civ. No. 05-0198-E-BLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | MEMORANDUM DECISION AND ORDER |
| KEYBANK NATIONAL ASSOCIATION, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## INTRODUCTION

The Court has before it cross-motions for partial summary judgment and a motion to strike. At the conclusion of oral argument, the Court denied Davis's motion from the bench (thereby mooting the motion to strike), and taking under advisement Key Bank's motion for partial summary judgment. For the reasons expressed below, the Court will grant that motion in part.

## BACKGROUND

Plaintiff Davis claims that defendant Key Bank improperly foreclosed on two real estate loans. The first loan was for $250,000 to expand her clothing

**Memorandum Decision & Order – page 1**

business in Colorado. This was a home equity loan secured by a deed of trust to Davis's Sun Valley home.

Thereafter, Davis decided to move to Colorado. She put her Sun Valley home on the market, and received an offer of $2 million. To arrange the purchase of a Colorado home, she sought the advice of Matthew Loren from Key Bank. She alleges that he advised her to take out a "bridge loan" of $1.4 million with a 3-month maturity date secured by a mortgage on her Sun Valley home. The quick maturity date was designed to coincide with the sale of Davis's Sun Valley home that would provide the proceeds Davis needed to pay off the bridge loan.

Davis followed this advice, obtained the bridge loan, and used it to purchase the Colorado house before closing on her Sun Valley home. Unfortunately, however, the sale of her Sun Valley home fell through, leaving her with a past due bridge loan that she could not pay.

While Davis was clearly in default on her bridge loan at this time, it is less clear whether she was also in default of her home equity loan. At any rate, Key Bank decided to foreclose on the trust deed securing the home equity loan rather than the mortgage securing the bridge loan.

Key Bank served Davis with a Notice of Trustee's Sale. Davis, through her attorney Robert Lees, threatened to enjoin the sale. The parties negotiated an

**Memorandum Decision & Order – page 2**

agreement whereby Davis paid $10,000, and agreed not to seek to enjoin the Trustee's sale, to buy time to sell her Sun Valley home. Davis later sought additional extensions, and paid another $10,000.

Ultimately, Davis could not sell her Sun Valley home. Key Bank sold the home under the trust deed, and Davis claims to have lost over $1 million in equity from that sale. She has brought this suit to recover her damages.

In a prior decision, the Court refused to allow Davis to amend her complaint to allege a breach of fiduciary duty claim against Key Bank. The Court held that the general rule in Idaho was that no fiduciary duty exists between a bank and its customer.

The Court also granted summary judgment for Davis on the liability aspects of Count Eighteen, which alleges that Key Bank breached the terms of the home equity loan and trust deed when it demanded the amounts due on the bridge note to stop foreclosure of the trust deed. The Court held that Key Bank had no right to foreclose the Trust Deed because the Bridge Loan was in default.

The Court refused, however, to grant any remedy for the breach, finding questions of fact as to whether waiver or estoppel applied to prevent Davis from asserting the breach. More specifically, there are questions whether Davis, through her attorney Robert Lees, agreed to waive her defenses to the foreclosure sale in

exchange for extensions of time designed to give her time to sell her Sun Valley home. If Davis waived her rights, then she is not entitled to any remedy for Key Bank's breach.

At the time of the earlier decision (and apparently still true today), the bridge loan remains in default. If it is found that Davis is not in default on the home equity loan, and that she did not waive her rights to assert Key Bank's breach, the proper remedy may be to set aside the trustee's sale, reinstate title in Davis, reaffirm her home equity obligation, and allow Key Bank to file a counterclaim for judicial foreclosure of the mortgage because the bridge loan default has not been cured.

Key Bank now seeks a partial summary judgment on Davis's claims other than Count Eighteen. In addition, the parties argued over the governing law. The Court will resolve each of these issues.

## ANALYSIS

1.  **Summary Judgment Standard of Review**

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be

**Memorandum Decision & Order – page 4**

isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id*.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

2.     **Choice of Law**

With regard to foreclosure procedures, the law of Idaho applies because the property is located here. *See Restatement (Second) of Conflicts*, § 229 (1971); *see also*, *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995) (holding that "[t]he security of

**Memorandum Decision & Order – page 6**

land title in Texas should not be compromised by applying the law of a different state to Texas foreclosure sales"). With regard to all other issues, the various contracts choose the laws of Ohio, Michigan, and Idaho, making it very difficult to determine which law the parties intended to apply. It may not matter, however. The only substantive difference between these laws identified by the parties lies in the Michigan Consumer Protection Act, but it is inapplicable to residential mortgage loan transactions. *See Newton v. West*, 686 N.W.2d 491 (Mich.Ct.App. 2004). Until the Court is notified of a difference that matters, the Court will apply the law of Idaho.

**3.     Count One**

Key Bank seeks summary judgment on Count One of the Third Amended Complaint. That Count alleges that Key Bank breached a contractual obligation to provide independent financial advice to Davis. In this claim, Davis alleges that the Bank had a special duty to her because it undertook to advise her on financial matters, going beyond the traditional lender/borrower relationship. In other words, Davis seeks to resurrect her claim for breach of fiduciary duty that the Court dismissed earlier. The Court is not persuaded, however, that bank representatives, by simply advising Davis of the loans which they could offer her and touting the benefits of each loan type, thereby created a special relationship with Davis which

**Memorandum Decision & Order – page 7**

generates a fiduciary relationship. Such an argument is nothing more than an attempted end-run around the Idaho case law which the Court relied upon in dismissing Davis's breach of fiduciary duty claims. Therefore, the Court will dismiss this claim as well, for the same reasons stated in that earlier decision.

**4.     Count Six**

Key Bank seeks to dismiss Count Six, the claim for intentional misrepresentation or fraud. Davis lists as fraud both (1) affirmative statements, and (2) omissions. With regard to the omissions, Davis alleges that the Bank never told her the risks of the bridge loan, including the consequences of being unable to sell her Sun Valley home. While Davis recognizes that she must establish a duty on the part of the Bank to reveal these omissions, she asserts that the Bank had such a duty because it was acting as her financial advisor and knew that she was ignorant and depending entirely on their advice. She cites *Tusch Enters. v. Coffin*, 740 P.2d 1022, 1027 (Id.Sup.Ct. 1987) for the proposition that the relationship she had with the Bank – even if short of a fiduciary relationship – was enough to trigger a duty to reveal these omissions.

However, *Tusch* dealt with the relationship between a home buyer and seller, not a bank lender and borrower. Other cases – cited by this Court in its earlier

**Memorandum Decision & Order – page 8**

decision dismissing the breach of fiduciary duty claim – govern the bank lender/borrower relationship. *Tusch* did not discuss those other cases and did not modify their holdings in any way. Davis is essentially seeking to avoid those cases by citing *Tusch*, a position the Court cannot adopt. Thus, the fraud-by-omission claims in Count Six must be dismissed for the same reason the breach of fiduciary duty claim was earlier dismissed.

With regard to the affirmative statements, Davis argues that the Court need not take into account the clear and convincing evidence standard for proving fraud in ruling on summary judgment. That is the rule in the state courts of Idaho. *G&M Farms v. Funk Irrigation Co.,* 808 P.2d 851 (1991). However, the rule here is just the opposite – the Court must determine whether a reasonable jury could conclude that Davis has shown fraud by clear and convincing proof. *See Liberty Lobby,* 477 U.S. at 255.

Davis begins by claiming that Key Bank affirmatively advised her to take the bridge loan. There is no evidence, however, that she qualified for any type of conventional loan. Davis testified that she understood that her only option was to take out the bridge loan. *See Davis Deposition* at pp. 100-01. No reasonable juror could find that this is clear and convincing evidence of fraud.

Davis also bases her claim on statements of Ian Glassford that she did not

**Memorandum Decision & Order – page 9**

have authority to sell her home.  She alleges in her complaint that she did "rely upon such false information to her/its loss and detriment."  *See Third Amended Complaint* at ¶ 102.  However, she provides no evidence of such reliance.  In her deposition, she testified that "I didn't believe him," referring to Glassford.  *See Davis Deposition* at p. 122.  Counsel then asked her "[s]o the answer is you didn't desist from an attempt to sell your home because of a statement Mr. Glassford allegedly made?  You kept on trying to sell it?"  *Id*. at p. 123.  Davis answered "Yes, I did."  *Id*.  Once again, no reasonable juror could find that this is clear and convincing evidence of fraud.

Davis also complains that Glassford "told me . . . that he was going to foreclose on my home."  *Id*.  In answers to subsequent questions, however, she fails to explain how she relied on the statement to her detriment, but rather complains that Glassford spread the foreclosure rumor, making it harder to sell her home.  *Id*. at 125.  Count Six alleges that Davis relied to her detriment on fraudulent statements, but there is no supporting evidence for this particular statement.

Davis also alleges that she was told that the property was not worth more than $1.6 million.  Once again, the evidence shows she refused to rely on this statement; she never dropped the asking price in reliance on this statement,

**Memorandum Decision & Order – page 10**

according to her own testimony. *Id*. at p. 127-28.

For all these reasons, the Court finds that no reasonable juror could conclude that Davis has presented clear and convincing evidence of fraud, and therefore will dismiss Count Six.

### 5.     Count Twelve

Count Twelve depends on a finding of fiduciary duty, and hence will be dismissed for the reasons expressed above.

### 6.     Count Fourteen

Count Fourteen alleges that Key Bank slandered Davis's title to the Sun Valley property by advising potential buyers that Davis had no right to sell the property and was in default on both the Equity Line and Trust Deed.  To prevail, Davis must show that Key Bank published a false slanderous statement with malice, resulting in special damages.  *McPheters v. Maile*, 64 P.3d 317 (Id.Sup.Ct. 2003).  Malice has been defined as "a reckless disregard for the truth or falsity of the statement."  *Weaver v. Stafford*, 8 P.3d 1234, 1244 (Id.Sup.Ct. 2000).

There are questions of fact on this claim, created by the publication of the Notice of Default on February 17, 2004.  The Court held in an earlier decision that there are questions of fact as to whether Davis was in default on the home equity

**Memorandum Decision & Order – page 11**

loan, which was secured by the Trust Deed. If she was not in default, the Notice falsely stated that Davis was in default. Other evidence raises a question whether the Notice was prepared with a reckless disregard for the truth. The Court will therefore deny the motion for summary judgment on Count Fourteen.

### 7.   Count Fifteen

Count Fifteen alleges a claim for slander of credit. There is no evidence that Key Bank made any false report to a credit agency or financial institution. Summary judgment shall therefore be granted as to this claim.

### 8.   Count Sixteen

Count Sixteen alleges a tortious interference with contract. Davis agrees that this claim may be dismissed, and the Court will therefore grant summary judgment as to this claim.

### 9.   Count Seventeen

Count Seventeen alleges a claim for tortious interference with prospective economic advantage. This claim is identical to the slander of title claim and hence is redundant and subject to dismissal.

### 10.   Count Twenty

Count Twenty seeks to void the indebtedness owed by Davis because of the wrongful conduct of Key Bank. This is basically a breach of fiduciary duty claim

**Memorandum Decision & Order – page 12**

and will accordingly be dismissed.

**11.     Conclusion**

When the results of this decision are considered along with past decisions and settlements by the plaintiffs with some parties, the following claims remain for resolution under the Third Amended Complaint: (1) Count Seven seeking injunctive relief; (2) Count Eleven seeking cancellation of the Trustee's Deed; (3) Count Thirteen seeking an accounting; (4) Count Fourteen for slander of title; (5) Count Eighteen as to issues of waiver, default on the home equity loan, and remedy for Key Bank's breach; and (6) Count Nineteen alleging a breach of the implied covenant of good faith and fair dealing.[1]

Counts One, Two, Three, Four, Five, Six, Eight, Nine, Ten, Twelve, Fifteen, Sixteen, Seventeen, and Twenty are all dismissed.

The parties are directed to call the Court's Law Clerk Dave Metcalf (208-334-9025) in a conference call to discuss the status of the case and to set dates for further proceedings.

## ORDER

In accordance with the Memorandum Decision set forth above,

---

[1] Key Bank did not seek summary judgment on Counts Seven, Eleven, Thirteen, and Nineteen in its motion for partial summary judgment resolved by this decision.

**Memorandum Decision & Order – page 13**

NOW THEREFORE IT IS HEREBY ORDERED, that Key Bank's motion for partial summary judgment (docket no. 161) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks to dismiss Counts One, Six, Twelve, Fifteen, Sixteen, Seventeen, and Twenty.  It is denied in all other respects.

IT IS FURTHER ORDERED, that plaintiff's motions for summary judgment (docket nos. 163 & 164) are DENIED.

IT IS FURTHER ORDERED, that Key Bank's motion to strike (docket no. 166) is DEEMED MOOT.

IT IS FURTHER ORDERED, that defendant Hammond's motion for joinder in the motion to strike (docket no. 168) is DEEMED MOOT.

IT IS FURTHER ORDERED, that counsel shall call the Court's Law Clerk Dave Metcalf (208-334-9025) to discuss further proceedings in this case.

DATED:  **April 20, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge