IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEBORAH BREUNER DAVIS, an Individual; and DEBORAH BRUENER DAVIS, as Trustee of the DEBORAH C. DAVIS TRUST, a Revocable Trust Dated February 21, 1975, amended and restated March 16, 2000,<br><br>        Plaintiffs,<br><br>  v.<br><br>KEYBANK NATIONAL ASSOCIATION, a/k/a Key Bank Private Banking, a/k/a Key Private Bank, a/k/a Key Bank, a/k/a McDonald Financial Group, a federally chartered commercial bank and a national banking association; M. DARIN HAMMOND, an Individual; SMITH KNOWLES, A PROFESSIONAL CORPORATION, and DOES 1 through 50, Inclusive,<br><br>        Defendants. | Case No. CV-05-198-E-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for sanctions filed by plaintiff Davis. The Court heard oral argument and took the motion under advisement. Also pending before the Court are (1) a motion for reconsideration, and (2) a motion to amend to

**Memorandum Decision and Order – Page 1**

add a punitive damage claim. The Court will resolve these motions below, and set a trial date and accompanying deadlines.

## BACKGROUND

Plaintiff Davis claims that defendant KeyBank improperly foreclosed on two real estate loans. The first loan was for $250,000 to expand her clothing business in Colorado. This was a Home Equity Loan secured by a deed of trust to Davis's Sun Valley home.

Thereafter, Davis decided to move to Colorado. She put her Sun Valley home on the market, and received an offer of $2 million. To arrange the purchase of a Colorado home, she took out a "bridge loan" from KeyBank of $1.4 million with a 3-month maturity date secured by a mortgage on her Sun Valley home. The quick maturity date was designed to coincide with the sale of Davis's Sun Valley home that would provide the proceeds Davis needed to pay off the bridge loan.

Davis used the bridge loan to purchase the Colorado house before closing on her Sun Valley home. When the sale of her Sun Valley home fell through, she was left with a bridge loan that she could not repay.

While Davis was clearly in default on her bridge loan at this time, it is less clear whether she was also in default of her Home Equity Loan. At any rate, KeyBank decided to foreclose on the trust deed securing the Home Equity Loan

**Memorandum Decision and Order – Page 2**

rather than the mortgage securing the bridge loan.

KeyBank served Davis with a Notice of Trustee's Sale, and demanded that Davis pay both the Bridge Loan and the Home Equity Loan to avoid foreclosure. Davis, through her attorney, threatened to enjoin the sale. The parties negotiated an agreement whereby Davis paid $10,000, and agreed not to seek to enjoin the Trustee's sale, to buy time to sell her Sun Valley home. Davis later sought additional extensions, and paid another $10,000.

Ultimately, Davis could not sell her Sun Valley home. KeyBank sold the home under the trust deed, and Davis claims to have lost over $1 million in equity from that sale. She has brought this suit to recover her damages.

In a prior decision, the Court ruled that KeyBank breached the terms of the Home Equity Loan and Trust Deed by demanding the amounts due on the Bridge Loan to stop foreclosure of the Trust Deed. The Court ruled that even if Davis was in default on the Home Equity Loan, KeyBank had no right to require payment of both the Bridge Loan and the Home Equity Loan as a condition of halting the Trust Deed foreclosure.

The Court refused, however, to grant any remedy for the breach, finding questions of fact as to whether waiver or estoppel applied to prevent Davis from asserting the breach. More specifically, there are questions whether Davis, waived

**Memorandum Decision and Order – Page 3**

her defenses to the foreclosure sale in exchange for extensions of time designed to give her time to sell her Sun Valley home. If Davis waived her rights, then she is not entitled to any remedy for KeyBank's breach.

The Court noted in its prior decision that, at that time, the bridge loan remained in default. The Court noted that if it is found that Davis is not in default on the Home Equity Loan, and that she did not waive her rights to assert KeyBank's breach, the proper remedy may be to set aside the trustee's sale, reinstate title in Davis, reaffirm her home equity obligation, and allow KeyBank to file a counterclaim for judicial foreclosure of the mortgage because the bridge loan default has not been cured.

When the results of the Court's prior decisions are considered, along with settlements by Davis with some parties, the following claims remain for resolution under the Third Amended Complaint: (1) Count Seven seeking to enjoin KeyBank from transferring title to the foreclosed property; (2) Count Eleven seeking cancellation of the Trustee's Deed; (3) Count Thirteen seeking an accounting; (4) Count Fourteen for slander of title; (5) Count Eighteen as to issues of waiver, default on the Home Equity Loan, and remedy for KeyBank's breach; and (6) Count Nineteen alleging a breach of the implied covenant of good faith and fair dealing.

No trial date has yet been set. The parties are awaiting the Court's resolution of the pending motions. The Court will decide the motions below, and then proceed to set a trial date.

## ANALYSIS

**1.      Motion for Sanctions**

Davis claims that her former attorney – Kenneth Catanzarite – has provided information to defendant KeyBank damaging to Davis and in violation of the Rules of Professional Conduct. Davis seeks to sanction Catanzarite by barring him from collecting any attorney fees due him (but not yet collected) for his work on this case.

On March 13, 2006, Davis hired Catanzarite to reopen her divorce and stop the pending foreclosure of her Sun Valley property. By her own admission, Davis was, at this time, in "horrible financial shape." *See Davis Deposition* at p. 51. Because she could not afford a standard fee arrangement, she agreed to sell Catanzarite her home in Steamboat Springs, Colorado, which he leased back to her, allowing her to reside in the home.

Catanzarite pursued the two legal matters for which he was retained. While he was unsuccessful in getting the divorce re-opened, he was awarded summary judgment in this case that KeyBank wrongfully foreclosed on the Sun Valley

property.

On June 9, 2006, Catanzarite filed a motion to withdraw as counsel for Davis. That motion was granted on June 12, 2006.

Catanzarite filed a lien for his unpaid attorney fees. On July 13, 2006, Catanzarite filed an arbitration proceeding to evict Davis from the Steamboat Springs house. Davis responded by filing suit in Colorado state court seeking an order that the fee agreement and house sale were unconscionable.

The Colorado state court proceeding was stayed pending the outcome of the arbitration. During the arbitration, Davis offered to settle by, among other things, paying Catanzarite out of proceeds from a settlement in this case.

To determine if the offer was legitimate, Davis called KeyBank's counsel John Ward in February/March of 2007 to see if settlement negotiations were taking place in this case. Ward responded that he could not comment on the settlement negotiations. Catanzarite advised Ward that he had a lien for his attorney fees, and anticipated that the arbitrator would reject Davis's claim that his fees were unconscionable. Ward responded that Davis had "made some pretty awful statements about him" at her deposition. *See Catanzarite Affidavit* at p. 10.

At the deposition, Davis stated that she had sued Catanzarite in Colorado state court "[b]ecause he stole my house," a clear reference to their fee

arrangement, on which Catanzarite's lien was based. *See Davis Deposition* at p. 50. Meanwhile, the arbitrator held that Catanzarite's fee was reasonable. Catanzarite was required to file the arbitrator's decision with the Routt County District Court, and he did so.

Catanzarite felt it important to refute Davis's charge that he "stole" her home. Thus, he sent Ward the arbitrator's decision "so he [Ward] would know that I had rights in any settlement proceeds or satisfaction of judgment." *See Catanzarite Affidavit* at p. 18. On August 1, 2007, the Routt County District Court confirmed the arbitration award and entered judgment thereon.

Davis now claims that by providing the arbitrator's award to Ward, Catanzarite "undercut [Davis's] bargaining position [with KeyBank] by encouraging KeyBank to become intransigent based on their newfound knowledge of [Davis's] desperate financial condition." *See Davis Opening Brief* at p. 8. Davis asks the Court to sanction Catanzarite for his conduct.

Was this "newfound" knowledge? While the arbitrator's decision discusses the financial plight that led Davis into the fee arrangement, Davis herself revealed her "horrible" financial condition at her deposition (quoted above), well-before Catanzarite provided the decision to Ward. While it is true that the arbitrator makes a passing mention in a footnote to Davis's difficulty in paying her *current*

**Memorandum Decision and Order – Page 7**

attorney, this was no dramatic revelation given her past financial distress.

But even if the arbitrator's decision could be read as revealing damaging information regarding Davis, Catanzarite had the right to send it to Ward. Idaho Rule of Professional Conduct 1.6(b)(5) allows an attorney to reveal information relating to his representation of a client "to respond to allegations in any proceeding concerning the lawyer's representation of a client . . . ." Catanzarite had been accused by Davis of charging an unreasonable fee. That charge could weaken Catanzarite's ability to enforce his attorney fee lien in this proceeding, and hence he was justified in responding to the charge by providing Ward with the arbitrator's decision.

Davis argues that Rule 1.6(b)(5) only applies when an attorney needs to defend himself against formal civil or criminal charges. The Court disagrees. Subsection (5) discusses the rights an attorney has to defend himself against a "criminal charge or civil claim" – covering the formal charges Davis refers to – but goes further and also covers "any proceeding concerning the lawyer's representation of the client . . . ." Thus, the Rule is broad enough to encompass the "proceeding" in this case. Catanzarite had the right to defend himself here from a charge that essentially challenged the basis of his attorney fee lien. Moreover, the Court cannot ignore the fact that the arbitrator's award was not a confidential

**Memorandum Decision and Order – Page 8**

document in the attorney's file, but was filed, as required by law, as a public document.

Davis is on stronger ground in arguing that Catanzarite went too far in his briefing by belittling the strength of Davis's claims. Nevertheless, his comments were not gratuitous but part of his defense of his fee – he incurred large fees because some of the claims were tenuous at best, in his judgment. The arbitrator agreed. Even if the briefing statements were somewhat over the line, they do not warrant the sanction sought by Davis because they were intertwined with Catanzarite's defense of his fee and lien.

For all these reasons, the Court finds that the motion for sanctions will be denied.

**2.   Motion to Reconsider**

Davis moved for summary judgment on her claim that KeyBank should provide an accounting of the payments made, fees charged, and other ledger entries regarding the two loans. The Court did not rule on that part of the motion in its earlier decision.

An accounting will be absolutely necessary prior to trial to determine if Davis was in default on the Home Equity Loan. An accounting is necessary of both that loan and the Bridge Loan to determine where any payments were applied.

**Memorandum Decision and Order – Page 9**

For that reason, an accounting cannot await trial but must be done well-prior to trial to allow all parties to properly prepare.

Accordingly, the Court shall grant the motion and require KeyBank to provide an accounting to Davis regarding the two loans within 45 days.

### 3. Motion To Amend To Add Punitive Damages

Davis seeks to amend her complaint to add a claim for punitive damages. She asks either that (1) the amendment be granted without a pre-trial hearing; or (2) that a pre-trial hearing be held.

The Court will grant the motion in part, ordering that a hearing be held, but will deny the motion to the extent it seeks an amendment without a hearing.  At the hearing, Davis must show – pursuant to Idaho Code § 6-1604 – that she has a reasonable likelihood of proving at trial conduct by defendants that is oppressive, fraudulent, malicious or outrageous.  If Davis make that showing at the pre-trial hearing, she will be entitled to amend her complaint to allege punitive damages. The motion  is denied in all other respects.

### 4. Trial

The Court shall hold a jury trial in this case on April 7, 2008, at the Federal Courthouse in Pocatello, Idaho.  The pretrial conference shall be held on March 24, 2008, at 1:30 p.m. by telephone, with plaintiffs to initiate the call.  The Court may

be reached at 208-334-9145.

The Court will also order that all settlement negotiations be completed on or before March 3, 2008, and will set forth below (1) the deadlines for the submission of all pre-trial material, and (2) the procedures that will govern the trial.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for sanctions (Docket No. 208) is DENIED.

IT IS FURTHER ORDERED, that the motion to reconsider (Docket No. 200) is GRANTED, and KeyBank shall provide Davis with an accounting of the two loans at issue within forty-five (45) days from the date of this Order.

IT IS FURTHER ORDERED, that the motion for punitive damages (Docket No. 197) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks a pre-trial hearing on whether plaintiffs have a reasonable likelihood of proving oppressive, fraudulent, malicious or outrageous conduct by defendants pursuant to Idaho Code § 6-1604.  If plaintiffs make that showing, they will be entitled to amend their complaint to allege punitive damages.  The motion is denied in all other respects.

IT IS FURTHER ORDERED, that the hearing on the motion to amend to

**Memorandum Decision and Order – Page 11**

add punitive damages shall be held on **February 12, 2008, at 9:00 a.m.** in the Federal Courthouse in Pocatello Idaho.

IT IS FURTHER ORDERED, that the following deadlines and procedures shall govern the remainder of this litigation:

1. <u>Trial Date</u>:  A 5-day jury trial shall be set for **<u>April 7, 2008, at 1:30 p.m.</u>** in the Federal Courthouse in **Pocatello, Idaho**.

2. <u>Pretrial Date</u>:  A telephonic pretrial conference shall be held on **<u>March 24, 2008, at 1:30 p.m.</u>**  Counsel for Plaintiff shall initiate the call.  The Court can be reached at (208) 334-9145.  The purpose of the conference is to discuss and resolve (1) the legal issues remaining in the case; (2) evidentiary issues; (3) trial logistics; and (4) any other matter pertaining to the trial.  Not less than twenty days prior to the date of the pretrial conference, the parties shall communicate and reach agreement on as many items as possible.  The parties shall be prepared to discuss with the Court those items over which counsel disagrees.

3. <u>Witness Lists</u>:  The parties shall exchange witness lists on or before **<u>March 21, 2008</u>**.  The witness lists shall contain the material listed in F.R.C.P. 26(a)(3)(A)&(B), and shall include a full summary, not just the subject, of the witnesses' expected testimony.

**Memorandum Decision and Order – Page 12**

4.   <u>Exhibit Lists, Exhibits, Proposed Voir Dire, Proposed Jury Instructions, Trial Briefs and Motions in Limine</u>:  All exhibit lists, proposed voir dire, proposed jury instructions, trial briefs, and motions in limine shall be filed with the Court on or before **March 21, 2008**.  On the same date the parties shall exchange all trial exhibits, but shall not provide them to the Court until the day of trial.  Counsel shall only provide the Court with a set of original pre-marked exhibits.  Because of the use of electronic evidence presentation systems, it is unnecessary to provide any copies.  Counsel may wish to have available in the courtroom a copy of any exhibits which the Court may find difficult to review through the evidence presentation system.  The exhibit lists shall follow the guidelines set out in Local Rule 16.1(f) to the extent it is not inconsistent with this Order.  The exhibit lists shall be prepared on form provided by the Deputy Clerk, with sufficient copies for the Judge, the Deputy Clerk, and the Law Clerk.  Exhibit numbers 1 through 999 shall be reserved for joint exhibits; exhibit numbers 1000 through 1999 shall be reserved for plaintiff's exhibits; exhibit numbers 2000 through 2999 shall be reserved for the first defendant listed on the caption; exhibit numbers 3000 through 3999 shall be reserved for the second defendant listed on the caption; and so on.  Counsel shall review their exhibits, determine any

**Memorandum Decision and Order – Page 13**

duplication, and jointly mark and stipulate to the admission of those exhibits that both sides intend to offer and rely upon.  The proposed jury instructions shall follow the guidelines set out in Local Rule 51.1 to the extent it is not inconsistent with this Order.  Additionally, counsel shall provide a clean copy of the Jury Instructions to the Court in Word Perfect format and emailed to BLW_orders@id.uscourts.gov.

5. <u>Settlement/Mediation Deadline</u>:  The parties shall notify the Court on or before **March 3, 2008,** that the case has either settled or will definitely go to trial.

6. <u>Trial Procedures</u>:

   a. The Court will generally control voir dire, and counsel will be limited to 20-30 minutes.  Counsel are cautioned not to repeat questions already asked by the Court or other counsel and are advised that the Court will not permit voir dire which appears intended to influence the jury rather than explore appropriate concerns with a juror's ability to be fair and impartial.

   b. Counsel shall exercise good faith in attempting to reach a stipulation on undisputed facts and admission of exhibits.

   c. During trial, the jury will be in the box hearing testimony the entire

**Memorandum Decision and Order – Page 14**

       trial day between 9:00 a.m and 5:00 p.m., except for the standard fifteen minute morning and afternoon recesses, and the lunch recess. During the time the jury is in the jury box, no argument, beyond on-sentence evidentiary objections, shall be allowed to interrupt the flow of testimony. If counsel have matters that need to be resolved outside the presence of the jury, they are to advise the Court and counsel prior to the issue arising during trial so that it can be heard during a recess, or before or after the jury convenes. Where the need for such a hearing cannot be anticipated, the Court will direct the examining counsel to avoid the objectionable subject and continue on a different line of questioning so that the objection can be argued and resolved at the next recess. To avoid late-night sessions, counsel are advised to bring up all anticipated evidentiary questions in their pretrial briefs.

    d.    Counsel shall have enough witnesses ready to ensure a full day of

testimony.  If witnesses are unavoidable delayed, counsel shall

promptly notify the court and opposing counsel.



DATED:  **December 21, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 16**